# EXHIBIT B

 **CT Corporation**

**Service of Process Transmittal**
05/07/2012
CT Log Number 520467316

**TO:** Maria Koller
Verizon Communications Inc.
One Verizon Way
Basking Ridge, NJ 07920-1097

**RE:** **Process Served in Florida**

**FOR:** Verizon Wireless Services, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Maizetta Pierre, Pltf. vs. Verizon Wireless Services, LLC, Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s), First Request, Request, First Set of Interrogatories. Letter |
| **COURT/AGENCY:** | Broward County Circuit Court, FL<br>Case # 121102618 |
| **NATURE OF ACTION:** | Violations of the Florida Consumer Collection Practices Act - Defendant willfully communicated with and harass the Plaintiff in an attempt to collect an allege debt |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/07/2012 at 13:40 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | William Peerce Howard<br>Morgan & Morgan, P.A.<br>One Tampa City Center, Suite 700<br>201 N. Franklin Street<br>Tampa, FL 33602<br>813-223-5505 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/07/2012, Expected Purge Date: 05/12/2012<br>Image SOP<br>Email Notification, Corinne Montgomery Corinne.Montgomery@VerizonWireless.com<br>Email Notification, David Krebs David.Krebs@VerizonWireless.com<br>Email Notification, Maria Koller maria.j.koller@verizon.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Donna Moch<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>954-473-5503 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

IN THE Circuit COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
(Ft. Lauderdale)

MAIZETTA PIERRE
   Plaintiff

-v-                     CASE NO.:   **12 - 11026**



VERIZON WIRELESS SERVICES, LLC    DIV:
   Defendant

_____/        DATE: 5-7-12   TIME: 1:40

                **SUMMONS**

                  ERIC DEAL       •   S.P.S.  #338

THE STATE OF FLORIDA:
TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:
GREETINGS:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the
Complaint, Interrogatories, Request for Production and Request for Admissions in the above
styled cause upon the Defendant:

              VERIZON WIRELESS SERVICES, LLC
                  C T Corporation System
                1200 South Pine Island Road
                  Plantation, FL 33324

     Each Defendant is hereby required to serve written defenses to said Statement of
Claim or petition on Plaintiff's attorney, whose name and address is:

            WILLIAM PEERCE HOWARD, ESQUIRE
                Of Morgan & Morgan, P.A.
                One Tampa City Center
            201 N. Franklin St., 7th Floor
                Tampa, FL 33602
                813.223.5505
                813.275.9295 F

within twenty (20) days after service of this Summons upon that Defendant exclusive of the
day of service, and to file the original of said written defenses with the Clerk of said Court

either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and seal of said Court on _____, 20___.

04-18-12



## HOWARD C. FORMAN

Clerk of the Circuit Court

(Court Seal)

By:_____
Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Public Information Dept,. Pasco County Government Center, 7530 Little Rd., New Port Richey, FL 34654; (727) 847-8110 (V) in New Port Richey; (352) 521-4274, ext 8110 (V) in Dade City, at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing impaired call 711. The court does not provide transportation and cannot accommodate for this service. Persons with disabilities needing transportation to court should contact their local public transportation providers for information regarding transportation services.**

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
(Ft. Lauderdale)

MAIZETTA PIERRE,

      Plaintiff,                      CASE NO.:

v.

VERIZON COMMUNICATIONS, INC. ,

      Defendant.

_____/

## COMPLAINT

1.      Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## JURISDICTION AND VENUE

2.      This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and cost.

3.      Jurisdiction and venue for purposes of this action are appropriate and conferred by Florida Statute.

4.      The alleged violations and conduct of Defendant described in the Complaint occurred in Broward County, Florida.

## FACTUAL ALLEGATIONS

5.      Plaintiff, MAIZETTA PIERRE, is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

6.      Plaintiff is a "consumer" as defined in Florida Statute 559.55(2).

1

7.      Defendant, VERIZON COMMUNICATIONS, INC., is a corporation and a citizen of the State of Delaware with its principal place of business at 140 W. Street, New York, 10007.

8.      Defendant consents of and has knowledge and control of the collection activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors; including, but not limited to "Valentine and Kebartas, Inc."

9.      Defendant consents of and has knowledge and control of the collection activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors; including, but not limited to "United Collection Bureau, Inc."

10.     Defendant is a "creditor" as defined by Florida Statute 559.55(3).

11.     Defendant followed their corporate policy when collecting form the Plaintiff.

12.     Defendant attempted to collect a debt from Plaintiff that arose from a transaction incurred for personal, family or household purposes and therefore is a "consumer debt."

13.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(1).

14.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

15.     Each call the Defendant made to the Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

2

16.     Each call the Defendant made to the Plaintiff's cellular phone was done so without the "express permission" of the Plaintiff.

17.     Each call the Defendant made the Plaintiff was an intentional and willful violation of the TCPA.

18.     Defendant left numerous artificial and/or prerecorded messages when calling the Plaintiff's cellular phone.

19.     Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

20.     In or about April 2011, Plaintiff requested telephone service from Defendant.

21.     In or about April 2011, within fifteen (15) minutes of the original conversation with Defendant, Plaintiff called and canceled service.

22.     In April of 2011, Plaintiff specifically put Defendant on notice that they were not to call his cellular telephone and revoked any express consent the Defendant may have thought they had.

23.     In April of 2011, Plaintiff revoked any express consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Defendant's placement of the calls, by cancelling the account with the Defendant within fifteen (15) minutes of opening said account.

24.     What followed was a campaign of abuse and harassment of illegal phone calls and contacts.

25.     Defendant willfully and knowingly called Plaintiff approximately one-hundred and forty (140) times in violation of the TCPA.

3

26.     On April 26, 2011, Defendant sent Plaintiff a letter confirming Plaintiff's Credit Card Account was reimbursed $158.99 for returned the equipment and cancelled service.   (See attached "Exhibit A").

27.     On or about May 26, 2011, Defendant sent Plaintiff a bill indicating that $143.18 was past due on her account. (See attached "Exhibit B").

28.     On or about June 13, 2011, Plaintiff sent Verizon a letter regarding the alleged balance due and included a copy of her credit card statement indicating the reimbursement from Verizon, along with a copy of her Verizon bills.  (See attached "Exhibit C").

29.     In or about June 2011 through October 2011, Defendant continued to send Plaintiff letters demanding payment.

30.     In or about June 2011 through October 2011, Defendant intentionally harassed and abused the Plaintiff on at least one-hundred and forty (140) times by using an automated dialer to call Plaintiff several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

31.     In or about June 2011 through October 2011, Plaintiff answered Defendant's calls on at least twenty (20) separate occasions, explaining to the Defendants that their equipment had been returned, Defendant was not providing her with any service, she owed them no money, and to stop calling her.  Plaintiff would direct the Defendant's attention to the letter from Defendant which indicated the return of equipment and cancellation of service. (See attached "Exhibit A")

32.     Plaintiff's numerous conversations and letters to the Defendant explaining the circumstances regarding the cancellation, return of equipment and demanding an end to the unwarranted harassment were ignored.

33.     None of Defendant's telephone calls placed to Plaintiff's cellular telephone were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

34.    In August of 2011, Defendant intensified their harassment and abuse by engaging a debt collector to collect a debt they knew Plaintiff did not owe.

35.    On or about August 26, 2011, Plaintiff received a letter from Valentine and Kebartas, Inc., on behalf of Defendant, in an attempt to collect the alleged debt that Plaintiff does not owe. (See attached "Exhibit D").

36.    On or about September 12, 2011, Defendants' agents, Valentine and Kebartas, were sent a letter requesting verification of the debt, on behalf of Plaintiff. (See attached "Exhibit E")

37.    On or about September 27, 2011, Defendant called the Plaintiff at 10:13 p.m.

38.    In December of 2011, Defendant intensified their harassment and abuse even more by engaging yet another debt collector to collect a debt they knew Plaintiff did not owe.

39.    On or about December 16, 2011, Plaintiff received a letter from United Collection Bureau, on behalf of Defendant, in an attempt to collect the alleged, disputed, and non-existent debt. (See attached "Exhibit F")

40.    Defendant willfully or knowingly violated the TCPA and FCCPA.

## COUNT I
### (Violation of the TCPA)

41.    Plaintiff incorporates Paragraphs one (1) through forty (40).

42.    Defendant placed at least one-hundred and forty (140) non-emergency calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of 47 U.S.C §227(b)(1)(A)(iii).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

5

43.     Plaintiff incorporates Paragraphs one (1) through forty (40).

44.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

45.     Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor with such frequency as can reasonably be expected to harass the debtor.

46.     Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to harass the debtor.

47.     Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse the debtor.

48.     Defendant has violated Florida Statute §559.72(9) by claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate.

49.     Defendant has violated Florida Statute §559.72(17) by communicating with the debtor between the hours of 9:00 p.m. and 8:00 a.m. without the prior consent of the debtor.

50.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of statutory damages and actual damages in the form of mental anguish, fear, worry, embarrassment, anger and frustration, as described by Florida Statute §559.77.

        WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

William Peerce Howard, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Florida Bar #: 0103330
Attorney for Plaintiff

7

**verizon**wireless

PO Box 4001
Acworth, GA 30101

April 28, 2011

MAIZETTA PIERRE
5961 N FALLS CIRCLE DR
APT 414
LAUDERHILL, FL 33319-6819

Re: Your Verizon Wireless Equipment Order # 00535414 Location code 1392001

Dear MAIZETTA PIERRE:

This letter is to notify you that we have received your equipment and have processed a refund for:

DIRECTSIM4G-A                                $0.00
LG-VL600                                     $158.99

Your credit card used to purchase the equipment has been credited the refund amount on 04/26/2011 and the credit will show on your credit card statement in 4-6 weeks.

If you have any additional questions, please feel free to contact our Customer Service Department at verizonwireless.com, 1-800-922-0204, or *611 airtime free from your Verizon Wireless phone. Available 7 days a week, 6AM-11PM.

Thank you,

Verizon Wireless Direct Fulfillment Returns Department



EXHIBIT
A

**freedom**

## ACCOUNT SUMMARY

| | |
|---|---|
| Account Number | |
| Previous Balance | $4,085.73 |
| Payment, Credits | $250.00 |
| Purchases | +$50.00 |
| Interest Charge | +$50.81 |
| New Balance | $4,073.54 |

| | |
|---|---|
| Opening/Closing Date | 04/22/11 - 05/21/11 |
| Total Credit Line | $4,800 |
| Available Credit | $600 |
| Cash Access Line | $900 |
| Available for Cash | $600 |

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $4,073.54 |
| Payment Due Date | 06/15/11 |
| Minimum Payment Due | $74.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APR's will be subject to increase to a maximum Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 15 years | $9,459 |
| $112 | 3 years | $4,754 (Savings=$2,705) |

If you would like information about credit counseling services, call 1-866-797-2885.

## CHASE FREEDOM REWARDS SUMMARY

| | |
|---|---|
| Previous Points Balance | 2,727 |
| Points earned on purchases | -124 |
| 10% Bonus Points on $1,243 Spend | -49 |
| Bonus 10 Point per Every Purchase | 10 |
| Points Redeemed x This Period | 2,500 |
| Current Points Total | 100 |

Get 5% Cash Back in quarterly bonus categories that change. Sign up is free and easy! 5% Cash Back categories are subject to a quarterly maximum. See full details and sign up at chase.com/freedom.

As a Chase Freedom card member you earn one cash back for all your spending. You get 1 point for every $1 you spend, plus you will receive 10% bonus points per $1 spend and 10 bonus points on every purchase. Receive a bonus point for cash back by going to redeem points at chase.com, plus you also receive a 10% bonus when you deposit into your Chase Checking account.

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 04/23 | WILLS HOUSTON FORT WORTH TX | $50.00 |
| 05/10 | Payment - Thank You | -100.00 |
| 06/09 | CUST # BOBBITS PHARM TAMPA FL | $6.00 |
| 05/20 | PURCHASE INTEREST CHARGE | $53.81 |
| | TOTAL INTEREST FOR THIS PERIOD | $53.81 |

| | |
|---|---|
| Total fees charged in 2011 | $78.05 |
| Total interest charged in 2011 | $176.05 |

Year-to-date totals reflect all charges minus any refunds applied to your account.



5175 Emerald Pkwy
Dublin, OH 43017

05/26/11

MAIZETTA PIERRE
5961 N FALLS CIRCLE DR
APT 414
LAUDERHILL    FL  333  9-6819

**ACCOUNT NUMBER**          **0001**    **BALANCE DUE: $143.18**

**\*\*\* PAST DUE ACCOUNT \*\*\***
Do not ignore this notice. Your eligibility for future service is based
on your payment history, so we advise you to make payment immediately.

Dear Verizon Wireless Customer:

Our records indicate your account is past due.

To avoid interruption of service and the possibility of incurring a $15
per line reconnection fee, the past due balance must be paid now.

For your convenience, you can pay from your Verizon Wireless phone by
dialing #PMT or visit our easy-to-use and secure payment website at
www.verizonwireless.com/PayMyBill. We accept checks, debit cards and most
major credit cards. Payments can be made 24 hours a day, free of charge.

Verizon Wireless Customer Financial Services
1-866-266-1445

If you have already made payment, please disregard this notice.

---

**DETACH HERE AND RETURN FOR TIMELY PAYMENT PROCESSING**

Please include your account number(s) on your check.
Account Number  (          0001
Market Code: 0025
Total Balance: $143.18       Amount of Payment

Electronic Fund Transfer (EFT) - Your check authorizes us either to make
a one-time EFT from your account or process your check. An EFT may be
withdrawn from your account as the same day you make your payment and your
check is not returned to you. If you wish it to be excluded from EFT, please
call 1-866-344-0401. If payment is returned unpaid, you authorized us to
collect an additional $25 fee through EFT from your account.

MAIZETTA PIERRE                          P.O. Box 660108
5961 N FALLS CIRCLE DR                   Dallas, TX 75266-0108
APT 414
LAUDERHILL    FL 33319-6819



EXHIBIT
B

EXHIBIT
C

MALCOLM PIERCE
6-13-11

NELSON,

I HAVE NEVER SEEN SUCH IN...

CONPIETENCE COMPANY AND US CONSTANTLY

HAPPY THAT I CANCELL WITH UCL.

LESS THAN AN HOUR AFTER I SIGN UP

I TRAVELED 3 TIMES TO GO OUT OF MY CITY
TO WORK, IMMEDIATELY I CALLED VERIZON
TO CANCEL AND AFTER HOURS I FINALLY
GET A REP WHO SAYS TO HAVE M. BRAU.
SHE SAID SHE HAS SUCCESS FOR UN SETT-
ING A CANCELLATION DEVICE ITLY, NOT THE
CASE. SINCE SHE CURRENT ANOTHER
FURTHER

(1) 2 BILLS, 1 PAST DUE LETTER
(2) A NUMBER OF CALLS WARNING ME
    ABOUT PAYMENT AND TO AVOID
    COLLECTION.

I WANTS TO GET THE EQUIPMENT HAS
RETURN THE PHONES. UNLESS RETURN AND,
TO THE CREDIT CARD. (STATEMENT INCLUDED)

I KNOW I MUST TELL UCL CRAZIES
(1) IM RECORDING ALL THE CALLS AND THREAT
    ABOUT COLLECTION, SAYING EXPECT
(2) IF UCL CRAZIES PUT MY NAME INTO
    COLLECTION. YOU'LL HEAR FROM ATTORNEY
    WITH THIS KIND OF SERVICE INSURANCE
    UCL PEOPLE HAVE MANY CROTCHERS FIT.

· Case 0:12-cv-61099-KMW   Document 1-2   Entered on FLSD Docket 06/05/2012   Page 16 of 95

**Valentine & Kebartas, Inc.**
P.O. Box 325
Lawrence, MA 01842
(800) 941-3849

August 26, 2011

Dear MAIZETTA PIERRE,

| |
| --- |
| RE: Verizon Wireless |
| ORIGINAL CREDITOR: Verizon Wireless |
| ACCOUNT NO[____]0001 |
| **TOTAL DUE: $ 305.35** |

We are concerned about the current economic crisis and the effect that it is having on the markets, and ultimately you. We understand in today's economic climate paying bills is becoming more and more difficult. It is our goal to help you get this debt paid.  This letter will serve as confirmation that our client has agreed to extend you a settlement offer up to **20%** off the total balance due.

To complete this agreement you must contact our office at 1-(800) 941-3849 within **10 days** of this offer. If payment is made without notifying our office the settlement will be null and void.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.  Should you wish to discuss this matter, please call us at the above toll-free number .



P.O. BOX 5804
TROY MI 48007-5804
RETURN SERVICE REQUESTED

PRESORT
FIRST-CLASS
U.S. POSTAGE &
FEES PAID
HOV SERVICES

ılıḥıḥıḥıllıₒₒₒllıₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗ
S-OTVAKI10 L-350 A[____]0001
P1NHFV00203940 l03941

MAIZETTA PIERRE
5961 N FALLS CIRCLE DR APT 414
LAUDERHILL FL 33319-6819



**EXHIBIT**

**D**

**glantzlaw**

Ronald P. Glantz
Also admitted in DC & NY Bars

Wendy Newman Glantz
Board Certified
Marital & Family Law
Family Law Mediator

September 12, 2011

Valentine & Kebartas, Inc.
P.O. Box 325
Lawrence, MA 01142

RE:    Our Client:    Maizetta Pierre
       Our File:      687497
       Your client:   Verizon Wireless
       Account:       ███████0001

To Whom It May Concern:

Please be advised that The Law Office of Glantzlaw is writing this letter on behalf of Ms. Maizetta Pierre who has received debt collection communications from your company. Please be advised that your client's entitlement to this claim, as well as the amount claimed is disputed.

Ms. Pierre advises and her documents confirm that she placed an order with Verizon for new service. Within 15 minutes of placing that order she cancelled it because she learned she would be moving out of the area. Verizon cancelled the order, never delivered the equipment and refunded her credit card. A copy of Verizon's cancellation is attached.

Accordingly, there is no basis for any claim by your principal.

Pursuant to the Fair Debt Collection Practices Act, 15 USC (1692) et seq., you are hereby directed to:

1.    Cease all further communication with our client, and
2.    Provide the undersigned with verification, addressing the facts outlined in paragraph two, including the names and addresses of all persons who claim they can verify that our client signed and received a copy of the purported contract.

Failure to provide proof upon receipt of this letter will indicate that this claim of debt remains disputed, and that all collection activity must cease until the debt is verified. Further, if you have reported or intend to report this matter to any credit bureau, it must be reported as disputed.

7951 W 6th Street • Suite 100 • Plantation, FL 33324
email: tel: 954.423.0066 • toll free: 800.290.7871

EXHIBIT
E

Valentine & Kobartas, Inc.
September 12, 2011
Page Two

Your failure to respond as demanded herein shall be considered as an intention on your part to refuse to amicably resolve this dispute between your principal and our client. You will therefore leave us with no choice but to advise our client concerning the avenues available under law. However, we anticipate your cooperation herein.

Very truly yours,

GLANTZLAW

BY:

KATHLEEN DOLAN-VALDES, ESQ.

KDV:kc
cc: Marzetta Pierre

Verizon Wireless
5175 Emerald Parkway
Dublin, OH 43017

UNITED COLLECTION BUREAU, INC.
5620 SOUTHWYCK BLVD SUITE 206
TOLEDO OH 43614

1-800-867-3104

December 16, 2011

MAIZETTA Z PIERRE
5961 N FALLS CIRCLE DR APT 414
LAUDERHILL FL 33319-6819

Re: VERIZON WIRELESS SOUTHWEST
Account Number: [           ]0001
Service Date:
Principal Amt:          $305.35
Collection Fee:         $54.96
Balance Due:            $360.31

This account has been placed with our office for collection.  Please pay in full to our office or call for arrangements.

When calling our office, please refer to reference number 34194856.

Business Hours:      8:00AM – 10:00PM Eastern Time Monday – Thursday
                     8:00AM – 8:00PM Eastern Time Friday
                     8:00AM – 4:00PM Eastern Time Saturday

Sincerely,

United Collection Bureau, Inc.

This is an attempt to collect a debt by UCB, Inc., a debt collector, and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The Collection Fee (if any) detailed above has been added to your account balance by Verizon Wireless in accordance with state law and as authorized in your Customer Agreement with Verizon Wireless.  The Collection Fee is not assessed to your account balance by UCB.

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

ICUC27000VDN

PO BOX 140190
TOLEDO OH 43614-0190

ADDRESS SERVICE REQUESTED

❑ Please check box if address shown is incorrect or insurance
   information has changed, and indicate change(s) on reverse side.

34194856-VDN          682087131
MAIZETTA Z PIERRE
5961 N FALLS CIRCLE DR APT 414
LAUDERHILL FL 33319-6819

PLEASE RETURN THIS PORTION WITH PAYMENT  DO NOT ATTACH CHECK TO STUB

Re: VERIZON WIRELESS SOUTHWEST
Account Number: [           ]0001
Service Date:
Principal Amt:          $305.35
Collection Fee:         $54.96
Balance Due:            $360.31

REMIT TO:

UNITED COLLECTION BUREAU, INC.
PO BOX 140190
TOLEDO OH 43614-0190

EXHIBIT
F

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
(FT. LAUDERDALE)

MAIZETTA PIERRE,

    Plaintiff

                              CASE NO.: 12-11026-18

-VS-

VERIZON WIRELESS SERVICES, LLC,

    Defendant

_____/

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

The Plaintiff, MAIZETTA PIERRE, pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, by and through her undersigned counsel, requests that Defendant, VERIZON WIRELESS SERVICES, LLC, respond within forty-five (45) days to the following requests:

### I.    DEFINITIONS

The following definitions shall apply to each of the requests for documents set forth and are deemed to be incorporated in each of the requests:

"VERIZON WIRELESS SERVICES, LLC," "VERIZON," "Defendant," "you" and "your" shall mean VERIZON WIRELESS SERVICES, LLC, and any of its directors, officers, sales agents, collection agents, debt collectors, managers, supervisors, general agents, agents, attorneys, accountants, consultants, investment advisors, bankers, employees, representatives and any other persons purporting to act on their behalf. These terms include divisions, affiliates, subsidiaries, predecessor entities, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf.

2.    "Any," "All," and "each" shall be construed as any, all and each.

3.     "And" shall mean and/or.

4.     "Concern," "concerning," "refer," "referring," "relate, " "relating," "regard" or "regarding" shall all mean documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, specify, memorialize, relate, describe, discuss, consider, concern, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

5.     "Document" or "documents" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic or other copy, sound or video records, magnetic or electrical impulse, electronically stored information ("ESI"), visual reproduction or communication is recorded, reproduced or represented, including each and any book, record, correspondence, report, memoranda, electronic mail (*i.e.*, email), contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log, telephone message, check, microfilm, microfiche, picture, photograph, printout, electronic data compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings, including, but not limited to, minutes of meetings, or other communication of any type, including inter-office communications, questionnaires, surveys, charges, newspapers, booklets, circulars, work papers, bulletin, notices, instructions, resolutions, reports, records, papers, bills or invoices, books of account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax returns, checks, receipts, journals and data of

2

every description, and shall include each and every original produced or reproduced by any method, all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all data compilations from which information can be obtained (translated, if necessary, into reasonably usable form) and any preliminary versions, drafts or revisions of any of the foregoing.

6.      "Including" means (1) including, but not limited to, or (2) including, without limitation. Any examples which follow these phrases are set forth to clarify the request, definition or instruction, not limited to the request, definition or instruction.

7.      "Identify" with respect to natural person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

8.      "Or" shall mean and/or.

9.      "Payment" shall include all available methods of funds tender, including but not limited to: cash; money order, a negotiable instrument such as a check, note, or draft; an ACH debit; bank, wire, or electronic-funds transfer, and credit-card payment.

10.     "Person" or "Persons" shall mean natural persons, proprietorships, joint ventures, partnerships, corporations, trust, groups, associations, organizations, governmental agencies and all other entities.

11.     "Plaintiff" or "Plaintiffs" shall mean MAIZETTA PIERRE.

12.     Plaintiff's cellular phone number at all times material hereto was       -8468.

3

13.     "Receipt" shall refer to the time at which a payment is made or given by or on behalf of a cardholder to Defendant, whether being delivered in-person during business hours (and thus shall refer to the time at which a payment is first given to Defendant); via U.S. mail or other delivery service (and thus shall refer to the time at which the payment delivered by the U.S. Postal Service or other delivery/courier service to Defendant or Defendant's post office box); via the Internet, Automated Teller Machine, telephone/ACH debit, or written authorization (and thus shall refer to the time at which the payment is debited from the payor's account and electronically transmitted to Defendant); via a branch's "night deposit" drop box (and thus shall refer to the time at which the payment is deposited into said drop box); or any other method Defendant receives cardholder payments.

14.     "FCCPA" means the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.*

15     The definitions of: "Commission" "communication" "consumer" "creditor" "debt" and "debt collector" are defined in the definition section the FCCPA.

16.     As used herein, "TCPA" means the Telephone Consumer Collection Practices Act, 47 U.S.C. §227, *et seq.*

17.     As used herein, "automatic telephone dialing system" shall mean equipment which has the capacity--**(A)** to store or produce telephone numbers to be called, using a random or sequential number generator; and **(B)** to dial such numbers, per 47 U.S.C. 227;

18.     As used herein, "artificial voice" shall be defined as that term is used in 47 U.S.C 227 (b)((1)(A);

19.     As used herein, "prerecorded voice" shall be defined as that term is used in 47 U.S.C 227 (b)((1)(A);

4

20. As used herein, "established business relationship" shall be defined as that term is used in 47 U.S.C. 227 (a)(2).

21. "Relevant time-period" means one (1) year prior to filing if this lawsuit, to the present. If a time-frame is not specified then the time-frame shall be two (2) years prior to this lawsuit, to the present.

22. "This debt" refers to the alleged debt you attempted to collect from the Plaintiff which is the subject of this lawsuit, whether or not it was a debt actually owed by the Plaintiff.

## II. INSTRUCTIONS

In responding to these requests, you are requested to comply with all obligations imposed upon you by the Florida Rules of Civil Procedure, including but not limited to, the requirement that you furnish all responsive documents within your possession, custody or control as specified in Fla.R.Civ.P. 1.350.

## III. DOCUMENTS REQUESTED

1. Documents you used to comply with the TCPA concerning your telephone calls made to the Plaintiff.

2. Documents you used to comply with the FCCPA concerning your telephone calls made to the Plaintiff.

3. Documents you received from the Plaintiff.

4. Documents illustrating Plaintiff is responsible for the debt at issue in this lawsuit.

5. Documents evidencing any investigation or confirmation concerning the validity or legitimacy of this debt.

6. Documents evidencing verification of the debt at issue in this lawsuit.

5

7.      Documents evidencing the contract or agreement for you to collect this debt from the Plaintiff.

8.      Documents evidencing any contract or agreement with any debt collector(s) or creditor concerning the collection of this debt.

9.      Documents evidencing the contract or agreement between you and each collector that spoke to the Plaintiff or left a message.

10.     Documents evidencing any communication between you and any debt collector(s) concerning the Plaintiff.

11.     Documents evidencing any communication between you and any creditor concerning the Plaintiff.

12.     Documents evidencing the contract or agreement with each supervisor that oversaw a collector that spoke to the Plaintiff. [Commonly referred to as employee contract].

13.     Documents evidencing the compensation package given to collectors and their supervisors that were involved in the collection of the debt which is the subject of this lawsuit.

14.     Any insurance policies, declaration pages, indemnification agreements or other contracts that defendant has that may cover the violation(s) alleged in this lawsuit.

15.     Documents evidencing any notes taken, or entered into a computer, contemporaneously with all phone calls made concerning the debt at issue in this case, this includes calls by the defendant to the Plaintiff or from the Plaintiff to the Defendant, in addition to any third party contact. [Commonly referred to as account notes.]

16.     Documents evidencing the date and time and length of all phone calls made by or received from the Defendant concerning the Plaintiff or any third party relating to the debt at issue in this law suit. [Commonly referred to as call logs]

6

17.     Documents evidencing your monitoring policy and procedures of collectors while collecting debts.

18.     Internal memoranda, bulletins, committee or team reports, emails, meeting minutes, or other documents created or modified within the relevant time-period concerning or relating to the alleged violations in this lawsuit.

19.     Documents describing your tape recording procedures for incoming calls.

20.     Documents describing your tape recording procedures for outgoing calls.

21.     Documents describing your tape recording procedures for monitoring calls.

22.     Documents illustrating any names or alias you used when collecting this debt. [Commonly referred to as "caller names" or "collector names"]

23.     Tape recordings of any conversations with the Plaintiff.

24.     Documents describing your retention policy concerning saving tape recordings that are the subject of legal complaints filed against you.

25.     Documents describing your retention policy concerning saving tape recordings that are the subject of informal complaints by consumers or their attorneys.

26.     Documents related to any reprimand to any employee or supervisor that was given related to the allegations in this lawsuit.

27.     Documents related to any report done as a result of this lawsuit. [Commonly referred to as an incident report].

28.     Documents related to the supervision of the collector(s) on the debt that is subject of this lawsuit.

29.     Personnel file(s) for each employee who communicated with the Plaintiff in regard to the debt at issue in this lawsuit.

7

30.     Personnel file(s) for each supervisor that supervised an employee who communicated with the Plaintiff in regard to the debt at issue in this lawsuit.

31.     Documents describing your method and/or policies and procedures of tracking complaints made by consumers relating to Defendant's collection efforts and/or Defendant's calls to consumers.

32.     Prior complaints (whether formal or informal) for each employee who communicated with the Plaintiff in regard to the debt at issue in this lawsuit.

33.     Copies of all internal memoranda, bulletins, letters, committee or team reports, emails, meeting minutes, or other documents created or modified during the relevant time period which instruct or notify your employees, representatives or agents how to respond to or handle any complaints, claims, or allegations of violation of state or federal collection laws, including the FCCPA and the TCPA.

34.     Prior lawsuits filed against the Defendant, during the relevant time-period, for violation(s) of the FCCPA and/or TCPA in reference to collecting debts.

35.     Collection practices policies and procedures related to collection efforts made by you in communicating with or attempting to collect a debt from the Plaintiff.

36.     Documents used as guidelines, including scripts, for leaving messages for the Plaintiff.

37.     Training materials given to each employee who communicated with the plaintiff in regard to the debt at issue in this lawsuit.

38.     Testing results from any individual that was involved in the collection of the debt which is the subject of this lawsuit.

39.     Documents supporting your bona fide error defense.

8

39. All call logs or other documents which identify each and every call made by Defendant to Plaintiff's cellular telephone using an automatic telephone dialing system.

40. All call logs or other documents which identify each and every call made by Defendant to Plaintiff's cellular telephone using an artificial voice.

41. All call logs or other documents which identify each and every call made by Defendant to Plaintiff's cellular telephone using a prerecorded voice.

42. Any and all documents, contracts, agreements or other written documents establishing the creation of any contractual relationship between the Plaintiff and Defendant relating to the alleged VERIZON debt or account at issue in this lawsuit.

43. Any and all documents, contracts, agreements or other written documents establishing the existence of the alleged VERIZON debt or account at issue in this lawsuit.

44. Any loan agreements, credit card agreements, or other written instruments establishing the creation of a contractual relationship between the Plaintiff and Defendant as it relates to the alleged VERIZON debt or account at issue in this lawsuit.

45. For the period of time beginning April 1, 2011 through February 2012, all documents which relate to any effort undertaken by Defendant to stop Defendant's calls to Plaintiff's cellular telephone.

46. All call logs or other documents evidencing any phone calls made by Defendant, its employees or agents, to the Plaintiff concerning or relating to the alleged VERIZON debt or account at issue in this lawsuit.

9

47.     Any and all documents related to or concerning any communications between Plaintiff and Defendant, concerning or relating to the alleged VERIZON debt or account at issue in this lawsuit.

48.     A copy of all policies and procedures which concern or relate to practices to be followed by Defendant in communicating with or attempting to collect the alleged VERIZON debt from the Plaintiff.

49.     A copy of all policies and procedures for communication of voicemail messages to individuals in an attempt to collect a debt.

50.     A copy of all policies and procedures regarding Defendant's use of an automatic telephone dialing system in an attempt to collect debts.

51.     A copy of all policies and procedures regarding Defendant's use of an artificial voice in an attempt to collect debts.

52.     A copy of all policies and procedures regarding Defendant's use of pre-recorded voice in an attempt to collect debts.

53.     A copy of all policies and procedures regarding Defendant's determination of whether Plaintiff consented to calls placed to Plaintiff's cellular telephone using an automatic telephone dialing system.

54.     A copy of all policies and procedures regarding Defendant's determination of whether Plaintiff consented to calls placed to Plaintiff's cellular telephone using an artificial or pre-recorded voice.

53.     All records showing the total number of telephone calls Defendant placed on a daily, weekly and monthly basis using any automated dialing technology during the time period Defendant was telephoning Plaintiff.

10

54.     Defendant's telephone bill showing the itemization of calls placed during the time period Defendant was telephoning Plaintiff.

55.     All documents that support the factual basis of Defendant's denial of any of the allegation alleged in Plaintiff's Complaint.

56.     All documents that support the factual basis of any Affirmative Defense asserted by Defendant in its Answer and Affirmative Defense.

57.     Provide a log of all documents in Defendant's possession which Defendant asserts are protected by attorney work product or the attorney client privilege.  In your response, please provide the author, recipient and document date of each document along with the identity of all persons, other than counsel, who to your knowledge have reviewed or seen the documents.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on Defendant through Service of Process on its Registered Agent.

William Peerce Howard, Esquire
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
Florida Bar #:  0103330
Attorney for Plaintiff

11

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
(FT. LAUDERDALE)

MAIZETTA PIERRE,

    Plaintiff

                              CASE NO.: 12-11026-18

-VS-

VERIZON WIRELESS SERVICES, LLC,

    Defendant

_____/

## PLAINTIFF'S REQUEST FOR ADMISSIONS TO DEFENDANT

The Plaintiff by and through its undersigned attorney and pursuant to the Florida Rules of Civil Procedure, including Rule 1.370, and hereby respectfully requests that the Defendant admit or deny the following statements:

## DEFINITIONS

The Definitions used in Plaintiff's Request For Admissions To Defendant are defined by Florida Statute § 559.55 unless otherwise stated. The following definitions apply to each of the Request for Admissions set forth herein and are deemed to be incorporated in each of said requests:

1.      "VERIZON WIRELESS SERVICES, LLC.," "you" "VERIZON," and "your" shall mean VERIZON WIRELESS SERVICES, LLC, any of its directors officers, sales, agents, collection agents, debt collectors, managers, supervisors, general agents, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other persons purporting to act on their behalf. These defined terms include divisions,

affiliates, subsidiaries, predecessor entities, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf.

2. "Any," "All," and "each" shall be construed as any, all and each.

3. "And" shall mean and/or.

4. "Concern," "concerning," "refer," "referring," "relate, " "relating," "regard" or "regarding" shall all mean documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, specify, memorialize, relate, describe, discuss, consider, concern, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

5. "Document" or "documents" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic or other copy, sound or video records, magnetic or electrical impulse, electronically stored information ("ESI"), visual reproduction or communication is recorded, reproduced or represented, including each and any book, record, correspondence, report, memoranda, electronic mail (*i.e.*, email), contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log, telephone message, check, microfilm, microfiche, picture, photograph, printout, electronic data compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings, including, but not limited to, minutes of meetings, or other communication of any type, including inter-office communications, questionnaires, surveys, charges, newspapers, booklets, circulars,

work papers, bulletin, notices, instructions, resolutions, reports, records, papers, bills or invoices, books of account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax returns, checks, receipts, journals and data of every description, and shall include each and every original produced or reproduced by any method, all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all data compilations from which information can be obtained (translated, if necessary, into reasonably usable form) and any preliminary versions, drafts or revisions of any of the foregoing.

  6. "Including" means (1) including, but not limited to, or (2) including, without limitation.  Any examples which follow these phrases are set forth to clarify the request, definition or instruction, not limited to the request, definition or instruction.

  7. "Identify" with respect to natural person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

  8. "Or" shall mean and/or.

  9. "Payment" shall include all available methods of funds tender, including but not limited to:  cash; money order, a negotiable instrument such as a check, note, or draft; an ACH debit; bank, wire, or electronic-funds transfer, and credit-card payment.

  10. "Person" or "Persons" shall mean natural persons, proprietorships, joint ventures, partnerships, corporations, trust, groups, associations, organizations, governmental agencies and all other entities.

11.     "Plaintiff" or "Plaintiffs" shall mean MAIZETTA PIERRE.

12.     Plaintiff's cellular phone number at all times material hereto was (945) 610-8468.

13.     "Receipt" shall refer to the time at which a payment is made or given by or on behalf of a cardholder to Defendant, whether being delivered in-person during business hours (and thus shall refer to the time at which a payment is first given to Defendant); via U.S. mail or other delivery service (and thus shall refer to the time at which the payment delivered by the U.S. Postal Service or other delivery/courier service to Defendant or Defendant's post office box); via the Internet, Automated Teller Machine, telephone/ACH debit, or written authorization (and thus shall refer to the time at which the payment is debited from the payor's account and electronically transmitted to Defendant); via a branch's "night deposit" drop box (and thus shall refer to the time at which the payment is deposited into said drop box); or any other method Defendant receives cardholder payments.

14.     "FCCPA" means the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.*

15      The definitions of: "Commission" "communication" "consumer" "creditor" "debt" and "debt collector" are defined in the definition section the FCCPA.

16.     As used herein, "TCPA" means the Telephone Consumer Collection Practices Act, 47 U.S.C. §227, *et seq.*

17.     As used herein, "automatic telephone dialing system" shall mean equipment which has the capacity--**(A)** to store or produce telephone numbers to be called, using a random or sequential number generator; and **(B)** to dial such numbers, per 47 U.S.C. 227;

18.     As used herein, "artificial voice" shall be defined as that term is used in 47 U.S.C 227 (b)(1)(A);

19.   As used herein, "prerecorded voice" shall be defined as that term is used in 47 U.S.C 227 (b)(1)(A);

20.   As used herein, "established business relationship" shall be defined as that term is used in 47 U.S.C. 227 (a)(2).

21.   "Relevant time-period" means one (1) year prior to filing if this lawsuit, to the present. If a time-frame is not specified then the time-frame shall be two (2) years prior to this lawsuit, to the present.

22.   "This debt" refers to the alleged debt you attempted to collect from the Plaintiff which is the subject of this lawsuit, whether or not it was a debt actually owed by Plaintiff.

## REQUESTS FOR ADMISSIONS:

A.   Defendant admits it is a debt collector according to the FCCPA.

B.   Defendant attempted to collect a consumer debt from Plaintiff.

C.   Defendant called the Plaintiff's cellular telephone on back to back days.

D.   Defendant does not test its employees concerning compliance with the FCCPA.

E.   Defendant does not test its employees concerning compliance with the TCPA.

F.   Defendant does not monitor its employees concerning compliance with the FCCPA.

G.   Defendant does not monitor its employees concerning compliance with the TCPA.

H.   Defendant has in its possession, custody or control, a tape recorded conversation(s) of the Plaintiff in this case.

I.   Admit that during the period of time beginning June 1, 2011 through October 2011 Defendant made calls to Plaintiff's cellular telephone using an automatic telephone dialing system.

J.   Admit that during the period of time June 1, 2011 through October 2011, Defendant made in excess of 50 calls to Plaintiff's cellular telephone using an automatic telephone dialing system.

K.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made in excess of 100 calls to Plaintiff's cellular telephone using an automatic telephone dialing system.

L.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made in excess of 140 calls to Plaintiff's cellular telephone using an automatic telephone dialing system.

M.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made calls to Plaintiff's cellular telephone using an artificial voice.

N.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made in excess of 50 calls to Plaintiff's cellular telephone using an artificial voice.

O.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made in excess of 100 calls to Plaintiff's cellular telephone using an artificial voice.

P.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made calls to Plaintiff's cellular telephone using a prerecorded voice.

Q.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made in excess of 50 calls to Plaintiff's cellular telephone using a prerecorded voice.

R.  Admit that during the period of time beginning June 1, 2011 through October 2011, Defendant made in excess of 100 calls to Plaintiff's cellular telephone using a prerecorded voice.

S.  Admit that Plaintiff has never given Defendant express consent for Defendant to make calls to Plaintiff's cellular telephone using an automated telephone dialing system.

T.  Admit that Plaintiff has never given Defendant express consent for Defendant to make calls to Plaintiff's cellular telephone using an artificial voice.

U.  Admit that Plaintiff has never given Defendant express consent for Defendant to make calls to Plaintiff's cellular telephone using a prerecorded voice.

V.  Admit that none of the calls made by Defendant to Plaintiff's cellular telephone were made for emergency purposes.

W.  Admit that on at least one occasion, Defendant placed at least one telephone call or caused at least one telephone call to be placed to the Plaintiff after Plaintiff disputed the debt.

X.  Admit that it is Defendant's policy and practice to attempt to collect debts after the alleged debtor or any other person refuses, over the phone, to pay any debt.

Y.  Admit that Defendant has no written policy or procedure in place for the handling of accounts after Defendant receives notice that an alleged debtor or any other person refuses over the telephone to pay any debt.

Z.  Admit that Defendant has been the subject of at least one other consumer complaint filed with the Florida Department of Taxation and Finance or the Florida Department of Agriculture & Consumer Services, Division of Consumer Services.

AA. Admit that Defendant has been the subject of at least one other civil suit alleging violations of the Florida Consumer Collection Practices Act or the Fair Debt Collection Practices Act in the last two years.

ANSWERS OR OBJECTIONS, if any, must be served upon the undersigned counsel, on or before forty-five (45) days after service of the Request for Admissions. Otherwise, these statements shall be deemed admitted.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on

Defendant through Service of Process on its Registered Agent.

William Peerce Howard, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Florida Bar #: 0103330
Attorney for Plaintiff

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, STATE OF FLORIDA
(Ft. Lauderdale)

MAIZETTA PIERRE,

    Plaintiff

                            CASE NO: 12-11026-18

-vs-

VERIZON WIRELESS SERVICES, LLC,

    Defendant

_____/

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

    The Defendant, VERIZON WIRELESS SERVICES, LLC, pursuant to Rule 1.340, Florida Rules of Civil Procedure, is requested to answer, under oath, within 45 days after service hereof, the following interrogatories. Please be sure to understand that your answers are to be made under oath and can be used in a court of law.

    In answering, you are required to furnish such information as is available to you, or in the possession of your attorneys, agents, employees and investigators for you or your attorneys.

    Each interrogatory hereinafter set forth not only calls for your knowledge, but also for all knowledge that is available to you by reasonable inquiry, including inquiry of your representatives, agents, attorneys and investigators.

    In answering these interrogatories, you are requested to answer each interrogatory and subdivision thereof fully, completely and separately. You are hereby notified that at least as to those interrogatories that are unanswered or as to which you claim an inability to answer fully and

2

completely for the reason that your discovery is continuing, the undersigned will apply to the court for an order directing that these interrogatories be deemed continuing.

In answering, you are required to furnish such information as is available to you, or in the possession of your attorneys, agents, employees and investigators for you or your attorneys.

## I. DEFINITIONS

The following definitions apply to each of the Interrogatories set forth herein and are deemed to be incorporated in each of said requests:

1.     "VERIZON WIRELESS SERVICES, LLC," "you" and "your" shall mean VERIZON WIRELESS SERVICES, LLC, any of its directors officers, sales, agents, collection agents, debt collectors, managers, supervisors, general agents, agents (including attorneys, accountants, consultants, investment advisors or bankers), employees, representatives and any other persons purporting to act on their behalf. These defined terms include divisions, affiliates, subsidiaries, predecessor entities, acquired entities and/or related entities or any other entity acting or purporting to act on its behalf.

2.     "Any," "All," and "each" shall be construed as any, all and each.

3.     "And" shall mean and/or.

4.     "Concern," "concerning," "refer," "referring," "relate, " "relating," "regard" or "regarding" shall all mean documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, specify, memorialize, relate, describe,

3

discuss, consider, concern, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the request.

5.      "Communication" includes every manner or means of disclosure, transfer, or exchange of information, and every disclosure, transfer or exchange of information, whether orally or by document or whether face-to-face, by telephone, mail, personal delivery, or otherwise.

6.      "Document" or "documents" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic or other copy, sound or video records, magnetic or electrical impulse, electronically stored information ("ESI"), visual reproduction or communication is recorded, reproduced or represented, including each and any book, record, correspondence, report, memoranda, electronic mail (*i.e.*, email), contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log, telephone message, check, microfilm, microfiche, picture, photograph, printout, electronic data compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings, including, but not limited to, minutes of meetings, or other communication of any type, including inter-office communications, questionnaires, surveys, charges, newspapers, booklets, circulars, work papers, bulletin, notices, instructions, resolutions, reports, records, papers, bills or invoices, books of account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax returns, checks, receipts, journals and data of

4

every description, and shall include each and every original produced or reproduced by any method, all non-identical copies (whether different from the original because of notes made in or attached to such copy, or otherwise), all data compilations from which information can be obtained (translated, if necessary, into reasonably usable form) and any preliminary versions, drafts or revisions of any of the foregoing.

7.     "Including" means (1) including, but not limited to, or (2) including, without limitation.    Any examples which follow these phrases are set forth to clarify the request, definition or instruction, not limited to the request, definition or instruction.

8.     "Identify" with respect to natural person, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

8.     "Or" shall mean and/or.

9.     "Payment" shall include all available methods of funds tender, including but not limited to:  cash; money order, a negotiable instrument such as a check, note, or draft; an ACH debit; bank, wire, or electronic-funds transfer, and credit-card payment.

10.    "Person" or "Persons" shall mean natural persons, proprietorships, joint ventures, partnerships, corporations, trust, groups, associations, organizations, governmental agencies and all other entities.

11.    "Plaintiff" or "Plaintiffs" shall mean MAIZETTA PIERRE.

12.    Plaintiff's cellular phone number at all times material hereto was          8468.

5

13. "Receipt" shall refer to the time at which a payment is made or given by or on behalf of a cardholder to Defendant, whether being delivered in-person during business hours (and thus shall refer to the time at which a payment is first given to Defendant); via U.S. mail or other delivery service (and thus shall refer to the time at which the payment delivered by the U.S. Postal Service or other delivery/courier service to Defendant or Defendant's post office box); via the Internet, Automated Teller Machine, telephone/ACH debit, or written authorization (and thus shall refer to the time at which the payment is debited from the payor's account and electronically transmitted to Defendant); via a branch's "night deposit" drop box (and thus shall refer to the time at which the payment is deposited into said drop box); or any other method Defendant receives cardholder payments.

14. "FCCPA" means the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.*

15 The definitions of: "Commission" "communication" "consumer" "creditor" "debt" and "debt collector" are defined in the definition section the FCCPA.

16. As used herein, "TCPA" means the Telephone Consumer Collection Practices Act, 47 U.S.C. §227, *et seq.*

17. As used herein, "automatic telephone dialing system" shall mean equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers, per 47 U.S.C. 227;

18. As used herein, "artificial voice" shall be defined as that term is used in 47 U.S.C 227 (b)((1)(A);

19. As used herein, "prerecorded voice" shall be defined as that term is used in 47 U.S.C 227 (b)((1)(A);

20. As used herein, "established business relationship" shall be defined as that term is used in 47 U.S.C. 227 (a)(2).

21. "Relevant time-period" means one (1) year prior to filing if this lawsuit, to the present. If a time-frame is not specified then the time-frame shall be two (2) years prior to this lawsuit, to the present.

22. "This debt" refers to the alleged debt you attempted to collect from the Plaintiff which is the subject of this lawsuit, whether or not it was a debt actually owed by the Plaintiff.

## II.    INSTRUCTIONS

1. The answers to each interrogatory shall include such knowledge of the Defendant as is within Defendant's custody, possession or control, specifically including such information as to which Defendant could only provide facts upon information and belief. Answers shall include knowledge including but not limited to knowledge and documents in the custody, control or possession of Defendant's investigators, accountants, consultants, employees, attorneys or other agents. Where facts set forth in answers or portions thereof are supplied upon information and belief, rather than actual knowledge, the answers should so state, and specifically describe or identify the source or sources of such information and belief. If you cannot answer an interrogatory in full, after exercising due diligence to secure the information requested, so state and answer to the fullest extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

2.      Where identification of a document is required, the following shall be separately stated as to each document: its date; its exact title; the general subject matter of the document; the name of the author, his business affiliation (presently ad at the time the document or correspondence was prepared), and his last known address;  the name, business affiliation (presently and at the time he received the document) and the last known address of the addressee; the name, business affiliation (presently and at the time the document was prepared), and the last known address of every person to whom a copy of the document was to be sent other than the addressee described above; the names and addresses of all person who now have the original and who now have any copies; the identification and location of the files where the original and each copy is normally or presently kept.

3.      Whenever identification of a "person" is required, the following shall be separately stated as to each person:  the name and last known business address or location and phone number of each such person.  If such person is an individual, additionally state the business position or positions held by that individual at the time or times for which such identification is requested, and such person's last known residence address and phone number.  If such a person is not an individual, but is an entity or organization, additionally identify the individual or individuals employed by or representing such entity or organization who have knowledge or with whom communications have been had about, or relating to, the matter involved.

4.      These interrogatories are deemed to be continuing in nature, calling for further responses at such time as additional information or documents become known or reasonably available to Defendants.

5.     If you contend that the answer to any interrogatory is privileged, in whole or in part, or otherwise object to any part of any interrogatory, or that an identified document may be withheld regardless of its relevance, state the reasons for such objection or grounds for exclusion, and identify each person having knowledge of the factual basis, if any, on which the privilege or other ground is asserted.

## INTERROGATORIES TO THE DEFENDANT

1.      Please provide the name of the individual answering these Interrogatories and if applicable the person's official position or relationship with whom the Interrogatories are directed.

**ANSWER:**

2.      Is the Defendant's name in the complaint identified correctly?  If not, please state the correct name for the Defendant.

**ANSWER:**

3.      List all steps you took, including, but not limited to, description of training content, timing and duration of training, a description of all documents and audio visual materials used in said training, to make sure VERIZON was in compliance with the TCPA concerning the telephone calls that were made to the Plaintiff in this case.

**ANSWER:**

4.     List the dates and times that Defendant placed each phone call to Plaintiff's

cellular telephone of ____ 8468; and, as to each, specify whether such phone call was made

with an automated dialing system, artificial voice, prerecorded voice, and/or was made manually

by an individual.

## ANSWER

5.      List the exact conversation the Defendant had with the Plaintiff and the date and time of each conversation. [This interrogatories asks for exactly what the Plaintiff said to the Defendant and what the Defendant said to the Plaintiff during each telephone call]

   **ANSWER:**

6.    Please identify the name, residence address, business address and telephone number of each person believed or known by you, your agents or attorney to have any knowledge of the incidents described in the Complaint, and specify the subject matter of the witness' knowledge.

**ANSWER:**

7.     Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue to this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time and place and the substance of each statement.

    **ANSWER:**

8.     Please describe what actions were taken by Defendant to confirm Plaintiff's debt

was valid. With respect to each such action, please state the following:

a)     The name of the person(s) who took such action;

b)     Describe the procedure(s) the person(s) took to validate the debt;

c)     Identify all written and/or oral policy and procedures followed by said
person(s) in  validating the debt;

d)     Identify any and all documents the person(s) relied upon to validate the
debt; and,

e)     Identify by name, business address and telephone number any person(s)
not employed by the Plaintiff who were contacted in an effort to validate
the debt and describe the nature of the contact and substance of any
communication(s) regarding  same.

**ANSWER:**

9.  Please list the amount of the debt the Defendant is currently communicating with

from the Plaintiff. With respect to such debt state the following:

a)  The original amount of this debt;

b)  The applicable interest rate(s) the Defendant is attempting to collect from the Plaintiff and the date(s) the Defendant charged each interest rate(s) for this debt;

c)  The amount of any collection fee(s) the Defendant attempted to collect or did collect from the Plaintiff;

d)  For each collection fee, list the interest rates and dates for the charge(s) and the legal authority for charging this fee;

e)  Any additional fees the Defendant collected or attempted to collect from the Plaintiff, including but not limited to, attorney fees, finance charges, penalties and service charges and for each fee(s) describe the legal authority for charging this fee and applicable dates of collection.

f)  The policy or procedure followed to collect this debt.

**ANSWER:**

10.     Please identify the name and address of each individual that participated in or made entries concerning the debt at issue in the Complaint, including the names and addresses of any supervisors or managers. With respect to each such individual, please state the following:

a)     The proper corporate name of the company that employed each individual; and,

b)     The amount each entity or individual, collected or attempted to collect from the Plaintiff.

**ANSWER:**

11.    Identify any and all policies of insurance which you contend cover or may cover you for the allegations set forth in Plaintiff's complaint, detailing as to such policies the name of the insurer, the number of the policy, the effective dates of the policy, the available limits of the liability coverage, and the name and address of the custodian of the policy.

**ANSWER:**

12.     Identify each and every fact you rely upon to support each affirmative defense

alleged or raised by you in your Answer to the Complaint.

**ANSWER:**

13.        For the period of time beginning June 1, 2011 through October 31, 2011, please

state the number of times Defendant called Plaintiff's cellular telephone number using an

automatic telephone dialing system.

**ANSWER:**

14.     If Defendant contends that Plaintiff had given her prior express consent to Defendant

to allow Defendant to call Plaintiff's cellular telephone using an automatic telephone dialing

system, please state all facts which support Defendant's contention including but not limited to:

> a)    The date and time such prior express consent was given;
>
> b)    The manner in which such prior express consent was allegedly given;
>
> c)    The name, address, telephone number and position with Defendant of any
> and all individuals to whom such prior express consent was allegedly given; and
>
> d)    The identification of and location of any documents which relate to
> Defendant's contention that Plaintiff had given her prior express consent.

**ANSWER:**

15.     If Defendant contends that the calls alleged in the Complaint made to Plaintiff were

made for emergency purposes, please state all facts in support of Defendant's contention that

such calls were made for emergency purposes.

**ANSWER:**

16.      For the period of time beginning June 1, 2011 through October 31, 2011, please state the number of times Defendant called Plaintiff's cellular telephone number using an artificial voice.

**ANSWER:**

17.        If Defendant contends that Plaintiff had given her prior express consent

to Defendant to allow Defendant to call Plaintiff's cellular telephone using an artificial voice,

please state all facts which support Defendant's contention including but not limited to:

      a)   The date and time such prior express consent was given;

      b)   The manner in which such prior express consent was allegedly given;

      c)  The name, address, telephone number and position with Defendant of any and all individuals to whom such prior express consent was allegedly given; and

      d)  The identification of and location of any documents which relate to Defendant's contention that Plaintiff had given her prior express consent.

**ANSWER:**

18.          For the period of time beginning June 1, 2011 through October 31, 2011, please

state the number of times Defendant called Plaintiff's cellular telephone number using a

prerecorded voice.

**ANSWER:**

19.        If Defendant contends that Plaintiff had given her prior express consent

to Defendant to allow Defendant to call Plaintiff's cellular telephone using an prerecorded voice,

please state all facts which support Defendant's contention including but not limited to:

      a)   The date and time such prior express consent was given;

      b)   The manner in which such prior express consent was allegedly given;

      c)   The name, address, telephone number and position with Defendant of any
and all individuals to whom such prior express consent was allegedly given; and

      e)   The identification of and location of any documents which relate to
Defendant's contention that Plaintiff had given her prior express consent.

**ANSWER:**

28

20.           Describe the Defendant's policies and procedures for handling an account after a

debtor or consumer refuses over the telephone to pay any debt.

      **ANSWER:**

21.         Describe the Defendant's policies and procedures for handling an account after a

debtor or consumer identifies themselves as the incorrect party, and refuses over the phone to

pay any debt.

**ANSWER:**

22.         Describe the Defendant's policies and procedures for handling an account after a

debtor or consumer requests over the telephone the Defendant cease placing telephone calls

about any debt.

**ANSWER:**

23.        Identify all employees of defendant who established or reviewed defendant's

policies and practices or exercised supervisory authority relating to the collection of monies

allegedly owed by Plaintiff.

   **ANSWER:**

24.        State the name, address and telephone number of any and all individuals that have installed, configured, programmed, maintained, or repaired any telephone system of Defendant's within the last two (2) years.

**ANSWER:**

25.        State the name of any and all software programs that Defendant has used for the

collection of debts and managing customer information in the last two (2) years.

**ANSWER:**

26.          State all telephone numbers that Defendant has used in the normal course of business in the last two (2) years.

    **ANSWER:**

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing Answers to Interrogatories, and that the Answers are true and correct to the best of my knowledge and belief.

VERIZON WIRELESS SERVICES, LLC

By: _____

Printed Name: _____

Title: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of _____,2012, by _____, who has produced as identification _____, bearing number _____ expiring _____ and who did (did not) take an oath.


_____
Notary Public's Signature
Notary's Name (Typed/Printed)
My Commission Expires:

36

# MORGAN & MORGAN®

### *Attorneys At Law*

SUITE 700
ONE TAMPA CITY CENTER
TAMPA, FL 33602
(813) 223-5505
FAX: (813) 223-5402

April 27, 2012

* 1 4 6 9 6 4 1 *
Verizon Wireless Services, LLC
c/o C.T. Corporation System
1200 South Pine Island
Plantation, FL 33324

*Re: Settlement Request for our client –Maizetta Pierre*

Dear Madame/Sir:

Please be advised that we can settle this entire matter with your client Verizon
Wireless Services, LLC for $250,000 and satisfaction of the debt, inclusive to
all damages, attorney fee and costs; although we firmly believe this is well
below what a jury will award. Hopefully the Defendant recognizes their
potential exposure to a large jury verdict which will probably include punitive
damages.

However, we would like to resolve this in an amicable and expeditious manner.
We will leave this offer on the table for 7 days from the date of service of this
letter. If accepted we will provide the Release and the funds will need to be
available within 20 days from the receipt of this letter.

If we cannot settle, I kindly request deposition times, dates and suggested
location of the individuals who spoke to my client or called my client, and their
supervisors(s).

Feel free to call me should you have any questions or concerns. With kindest
regards I remain

Sincerely yours,

William Peerce Howard

WPH/aa
Enclosures

# MORGAN & MORGAN®

## Attorneys At Law

SUITE 700
ONE TAMPA CITY CENTER
TAMPA, FL 33602
(813) 223-5505
FAX: (813) 223-5402

April 27, 2012

*1 4 6 9 6 4 1 *

Verizon Wireless Services, LLC
c/o C.T. Corporation System
1200 South Pine Island
Plantation, FL 33324

RE:   Pierre, Maizetta - vs. Verizon Communications, Inc.

Dear Madame/Sir:

Please accept this letter as notice to preserve electronic data evidence which is critical to this case. By this letter, you and your client are hereby given notice, with respect to the above-referenced case, not to destroy, conceal, or alter any paper or electronic files and other data generated by and/or stored on your client's computers and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voice mail, telephone data, caller ID data, and data more specifically described below. As you know, your client's failure to comply with this notice can result in severe sanctions being imposed by the Court (and liability in tort) for spoliation of evidence or potential evidence.

Through discovery, we expect to obtain from you a number of documents and things, including files stored on your client's computers and telephones. In order to avoid spoliation, you will need to provide the data requested on the original media. Do not reuse any media to provide this data. Although we may bring a motion for an order preserving documents and things from destruction or alteration, your client's obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion.

Electronic documents and the storage media on which they reside contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will see all documents in their electronic form along with information about those

──────────── www.forthepeople.com ────────────

ATLANTA, GA   ◆   DAVIE, FL   ◆   DAYTONA BEACH, FL   ◆   FT. MYERS, FL   ◆   JACKSON, MS   ◆   JACKSONVILLE, FL   ◆   KISSIMMEE, FL
MEMPHIS, TN   ◆   NAPLES, FL   ◆   ORLANDO, FL   ◆   ST. PETERSBURG, FL   ◆   TAMPA, FL   ◆   TAVARES, FL   ◆   WINTER HAVEN, FL

documents contained on the media. We also will seek paper printouts of only those documents that contain unique information after they were printed out (such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting and redactions) along with any paper documents for which no corresponding electronic files exist.

Our discovery requests will ask for certain data on the hard disks, floppy disks and backup media and other devices that store electronic data used in your client's computers and telephones, some of which data are not readily available to an ordinary computer user, such as "deleted" files and "file fragments." As you may know, although a user may "erase" or "delete" a file, all that is really erased, is a reference to that file in a table on the hard disk; unless overwritten with new data, a "deleted" file can be as intact on the disk as any "active" file you would see in a directory listing.

Courts have made it clear that all information available on electronic storage media is discoverable, whether readily readable or "deleted" but recoverable. See, e.g., Easley, McCaleb & Assocs., Inc. v. Perry, No. E-2663, Ga. Super. Ct. July 13, 1994, "deleted" files on a party's computer hard drive held to be discoverable, and plaintiff's expert was allowed to retrieve all recoverable files; Santiago v. Miles, 121 F.R.D. 636, 640 (W.D.N.Y. 1988), a request for "raw information in computer banks" was proper and obtainable under the discovery rules; Gates Rubber Co. v. Bando Chemical Indus., Ltd., 167 F.R.D. 90, 112 (D. Colo. 1996), mirror-image copy of everything on a hard dive "the method which would yield the most complete and accurate results," chastising a party's expert for failing to do so; and Northwest Airlines v. Teamsters Local 2000, No. 00-08DWF/AJB (D. Minn.), court ordered image-copying by Northwest's expert of home computer hard drives of employees suspected of orchestrating an illegal "sick-out" on the Internet.

Accordingly, electronic data and storage media that may be subject to our discovery requests and that your client is obligated to maintain and not alter or destroy, include but are not limited to the following:

Description of Files and File Types Sought

All digital or analog electronic files, including "deleted" files and file fragments, stored in machine-readable format on magnetic, optical or other storage media, including the hard drives, floppy disks, caller ID devices used by your client's computers and their backup media (e.g., other hard drives, backup tapes, floppies, JAZ cartridges, CD-ROMs) or otherwise, regardless of whether such files have been reduced to paper printouts. More specifically, your client is to preserve all of its e-mails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all databases; all CAD (computer-aided design) files, including drafts and revisions; all presentation data or slide shows produced by

presentation software (such as Microsoft PowerPoint); all graphs, charts, and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management, and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal data assistants (PDAs), such as PalmPilot, iPaq, Blackberry, Palm Treo or other Windows CE, Pocket PC, or Windows Mobile devices or your client's home telephone or caller identification devices(s); all data created with the use of documents management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches, and "cookies' files generated at the workstation of each employee and/or agent in your client's employ and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail. Further, you are to preserve any log or logs of network use by employees or otherwise, whether kept in paper or electronic form, and to preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so there can be made a complete, bit-by-bit "mirror" evidentiary image copy of the storage media of each and every personal computer (and/or workstation) and network server in your control and custody, as well as image copies of all hard drives retained by you and no longer in service, but in use at any time from January 1, 2001 to the present.

Your client is also not to pack, compress, purge or otherwise dispose of files and parts of files unless a true and correct copy of such files is made.

Your client is also to preserve and not destroy all passwords, decryption procedures (including, if necessary, the software to decrypt the files); network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software, and any and all other information and things necessary to access, view and, if necessary, reconstruct the electronic data we are requesting through discovery.

1. Business Records: All documents and information about documents containing backup and/or archive policy and/or procedure, document retention policy, names of backup and/or archive software, names and addresses of any offsite storage provider.

a. All e–mail and information about e-mail (including message contents, header information and logs of e-mail system usage) sent or received by any individuals who performed work of any sort in regards to the Plaintiff or the Plaintiff's account with Defendant.

b. All other e-mail and information about e-mail (including message contents, header information and logs of e-mail system usage)

containing information about or related to the subject matter of this litigation.

c. All databases (including all records and fields and structural information in such databases), containing any reference to and/or information about or related to:

The Plaintiff or the Plaintiff's account with the Defendant;

d. All logs of activity (both in paper and electronic formats) on computer systems and networks that have or may have been used to process or store electronic data containing information about or related to :

The Plaintiff or the Plaintiff's account with the Defendant;

e. All word processing files, including prior drafts, "deleted" files, and file fragments, containing information about or related to:

The Plaintiff or the Plaintiff's account with the Defendant;

f. With regard to electronic data created by application programs that process financial, accounting and billing information, all electronic data files, including prior drafts, "deleted" files and file fragments, containing information about or related to:

The Plaintiff or the Plaintiff's account with the Defendant;

g. All files, including prior drafts, "deleted" files, and file fragments, containing information from electronic calendars and scheduling programs regarding or related to:

The Plaintiff or the Plaintiff's account with the Defendant;

h. All electronic data files, including prior drafts, "deleted" files and file fragments about or related to:

The Plaintiff or the Plaintiff's account with the Defendant;

2. Online Data Storage on Mainframes and Minicomputers: With regard to online storage and/or direct access storage devices attached to your client's mainframe computers and/or minicomputers: they are not to modify or delete any electronic data files, "deleted" files and file fragments existing at the time of this letter's delivery, which meet the definitions set forth in this letter, unless a true and correct copy of each such electronic data file has been made and steps have been

taken to ensure that such a copy will be preserved and accessible for purposes of this litigation.

3. Offline Data Storage, Backups and Archives, Floppy Diskettes, Tapes, and Other Removable Electronic Media: With regard to all electronic media used for offline storage, including magnetic tapes and cartridges and other media that, at the time of this letter's delivery, contained any electronic data meeting the criteria listed in paragraph 1 above: Your client is to stop any activity that may result in the loss of such electronic data, including rotation, destruction, overwriting and/or erasure of such media in whole or in part. This request is intended to cover all removable electronic media used for data storage in connection with their computer systems, including magnetic tapes and cartridges, magneto-optical disks, floppy diskettes, and all other media, whether used with personal computers, minicomputers, or mainframes or other computers, and whether containing backup and/or archive data sets and other electronic data, for all of their computer systems.

4. Replacement of Data Storage Devices: Your client is not to dispose of any electronic data storage devices and/or media that may be replaced due to failure and/or upgrade and/or other reasons that my contain electronic data meeting the criteria listed in paragraph 1 above.

5. Fixed Drives on Stand-Alone Personal Computers and Network Workstations: With regard to electronic data meeting the criteria listed in paragraph 1 above, which existed on fixed drives attached to stand-alone microcomputers and/or network workstations at the time of this letter's delivery: Your client is not to alter, erase, wipe or scrub such electronic data, and not to perform other procedures (such as data compression and disk defragmentation or optimization routines) that may impact such data, unless a true and correct copy has been made of such active files and completely restored versions of such deleted electronic files and file fragments, copies have been made of all directory listings (including hidden files) for all directories and subdirectories containing such files, and arrangements have been made to preserve copies during the pendency of this litigation.

6. Programs and Utilities: Your client is to preserve copies of all application programs and utilities, which may be used to process electronic data covered by this letter.

7. Log of System Modifications: Your client is to maintain an activity log to document modifications made to any electronic data processing system that may affect they system's capability to process any electronic data meeting the criteria listed in paragraph 1 above,

regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

8. Personal Computers Used by Your Clients: The following steps should immediately be taken in regard to all personal computers used by your client.

a. As to fixed drives attached to such computers: (i) a true and correct copy is to be made of all electronic data on such fixed drives relating to this matter, including all active files and completely restored versions of all deleted electronic files and file fragments; (ii) full directory listening (including hidden files) for all directories and subdirectories (including hidden directories) on such fixed drives should be written; and (iii) such copies and listings are to be preserved until this matter reaches its final resolution.

b. All floppy diskettes, magnetic tapes and cartridges, and other media used in connection with such computers prior to the date of delivery of this letter containing any electronic data relating to this matter are to be collected and put into storage for the duration of this lawsuit.

9. Evidence Created Subsequent to this letter: With regard to electronic data created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and our client is to take whatever steps are appropriate to avoid destruction of evidence.

10. Telephone and Caller Identification Devices: your client is to preserve all data contained in all telephones and caller identification devices on each and every telephone and caller ID device which your client asserts my client caused to ring at any time.

To assure that your and your clients' obligation to preserve documents and things will be met, please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter.

Sincerely yours,

William Peerce Howard
Morgan & Morgan

WPH/aa

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
(Ft. Lauderdale)

MAIZETTA PIERRE,

      Plaintiff,                    CASE NO.:  12-11026-18

v.

VERIZON WIRELESS SERVICES, LLC.,

      Defendant.

_____/

## AMENDED COMPLAINT

1.     Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA").

## JURISDICTION AND VENUE

2.     This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and cost.

3.     Jurisdiction and venue for purposes of this action are appropriate and conferred by Florida Statute.

4.     The alleged violations and conduct of Defendant described in the Complaint occurred in Broward County, Florida.

## FACTUAL ALLEGATIONS

5.     Plaintiff, MAIZETTA PIERRE, is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

6.     Plaintiff is a "consumer" as defined in Florida Statute 559.55(2).

7.      Defendant, VERIZON WIRELESS SERVICES, LLC., is a corporation and a citizen of the State of New Jersey with its principal place of business at One Verizon Way, VZ52N068, Basking Ridge, New Jersey, 07920.

8.      Defendant consents of and has knowledge and control of the collection activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors; including, but not limited to "Valentine and Kebartas, Inc."

9.      Defendant consents of and has knowledge and control of the collection activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors; including, but not limited to "United Collection Bureau, Inc."

10.     Defendant is a "creditor" as defined by Florida Statute 559.55(3).

11.     Defendant followed their corporate policy when collecting form the Plaintiff.

12.     Defendant attempted to collect a debt from Plaintiff that arose from a transaction incurred for personal, family or household purposes and therefore is a "consumer debt."

13.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(1).

14.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

15.     Each call the Defendant made to the Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

2

16.    Each call the Defendant made to the Plaintiff's cellular phone was done so without the "express permission" of the Plaintiff.

17.    Each call the Defendant made the Plaintiff was an intentional and willful violation of the TCPA.

18.    Defendant left numerous artificial and/or prerecorded messages when calling the Plaintiff's cellular phone.

19.    In or about April 2011, Plaintiff requested telephone service from Defendant.

20.    In or about April 2011, within fifteen (15) minutes of the original conversation with Defendant, Plaintiff called and canceled service.

21.    In April of 2011, Plaintiff specifically put Defendant on notice that they were not to call his cellular telephone and revoked any express consent the Defendant may have thought they had.

22.    In April of 2011, Plaintiff revoked any express consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Defendant's placement of the calls, by cancelling the account with the Defendant within fifteen (15) minutes of opening said account.

23.    What followed was a campaign of abuse and harassment of illegal phone calls and contacts.

24.    Defendant willfully and knowingly called Plaintiff approximately one-hundred and forty (140) times in violation of the TCPA.

25.    On April 26, 2011, Defendant sent Plaintiff a letter confirming Plaintiff's Credit Card Account was reimbursed $158.99 for returned the equipment and cancelled service.   (See attached "Exhibit A").

26.     On or about May 26, 2011, Defendant sent Plaintiff a bill indicating that $143.18 was past due on her account. (See attached "Exhibit B").

27.     On or about June 13, 2011, Plaintiff sent Verizon a letter regarding the alleged balance due and included a copy of her credit card statement indicating the reimbursement from Verizon, along with a copy of her Verizon bills.  (See attached "Exhibit C").

28.     In or about June 2011 through October 2011, Defendant continued to send Plaintiff letters demanding payment.

29.     In or about June 2011 through October 2011, Defendant intentionally harassed and abused the Plaintiff on at least one-hundred and forty (140) times by using an automated dialer to call Plaintiff several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

30.     In or about June 2011 through October 2011, Plaintiff answered Defendant's calls on at least twenty (20) separate occasions, explaining to the Defendants that their equipment had been returned, Defendant was not providing her with any service, she owed them no money, and to stop calling her.  Plaintiff would direct the Defendant's attention to the letter from Defendant which indicated the return of equipment and cancellation of service. (See attached "Exhibit A")

31.     Plaintiff's numerous conversations and letters to the Defendant explaining the circumstances regarding the cancellation, return of equipment and demanding an end to the unwarranted harassment were ignored.

32.     None of Defendant's telephone calls placed to Plaintiff's cellular telephone were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

33.     In August of 2011, Defendant intensified their harassment and abuse by engaging a debt collector to collect a debt they knew Plaintiff did not owe.

34.     On or about August 26, 2011, Plaintiff received a letter from Valentine and Kebartas, Inc., on behalf of Defendant, in an attempt to collect the alleged debt that Plaintiff does not owe. (See attached "Exhibit D").

35.     On or about September 12, 2011, Defendants' agents, Valentine and Kebartas, were sent a letter requesting verification of the debt, on behalf of Plaintiff. (See attached "Exhibit E")

36.     On or about September 27, 2011, Defendant called the Plaintiff at 10:13 p.m.

37.     In December of 2011, Defendant intensified their harassment and abuse even more by engaging yet another debt collector to collect a debt they knew Plaintiff did not owe.

38.     On or about December 16, 2011, Plaintiff received a letter from United Collection Bureau, on behalf of Defendant, in an attempt to collect the alleged, disputed, and non-existent debt. (See attached "Exhibit F")

39.     Defendant willfully or knowingly violated the TCPA and FCCPA.

## COUNT I
### (Violation of the TCPA)

40.     Plaintiff incorporates Paragraphs one (1) through thirty-nine (39).

41.     Defendant placed at least one-hundred and forty (140) non-emergency calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice without Plaintiff's prior express consent in violation of 47 U.S.C §227(b)(1)(A)(iii).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

42.     Plaintiff incorporates Paragraphs one (1) through thirty-nine (39).

5

43.    At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

44.    Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

45.    Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

46.    Defendant has violated Florida Statute §559.72(9) by claiming, attempting or threatening to enforce a debt when such person knows that the debt is not legitimate.

47.    Defendant has violated Florida Statute §559.72(17) by communicating with the debtor between the hours of 9:00 p.m. and 8:00 a.m. without the prior consent of the debtor.

48.    Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of statutory damages and actual damages in the form of mental anguish, fear, worry, embarrassment, anger and frustration, as described by Florida Statute §559.77.

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

William Peerce Howard, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Florida Bar #: 0103330
Attorney for Plaintiff



PO Box 4001
Acworth, GA 30101

April 28, 2011

MAIZETTA PIERRE
5561 N FALLS CIRCLE DR
APT 414
LAUDERHILL, FL 33311-6819

Re: Your Verizon Wireless Equipment Order # 00535414 Location code 1392001

Dear MAIZETTA PIERRE:

This letter is to notify you that we have received your equipment and have processed a refund for:

| | |
|---|---|
| DIRECTSIM4G-A | $0.00 |
| LG-VL600 | $158.99 |

Your credit card used to purchase the equipment has been credited the refund amount on 04/26/2011 and the credit will show on your credit card statement in 4-6 weeks.

If you have any additional questions, please feel free to contact our Customer Service Department at verizonwireless.com, 1-800-922-0204, or *611 airtime free from your Verizon Wireless phone. Available 7 days a week, 6AM-11PM.

Thank you,

Verizon Wireless Direct Fulfillment Returns Department



EXHIBIT
A

**freedom**

Manage your account online:
www.chase.com/cardbenefits

Additional contact information
conveniently located on reverse side

## ACCOUNT SUMMARY

| | |
|---|---|
| Account Number: 7901 | |
| Previous Balance | $4,593.72 |
| Payment, Credits | -$258.00 |
| Purchases | +$35.00 |
| Interest Charges | +$33.81 |
| New Balance | $4,073.54 |

| | |
|---|---|
| Opening/Closing Date | 04/22/11 - 05/21/11 |
| Total Credit Line | $4,500 |
| Available Credit | $426 |
| Cash Access Line | $900 |
| Available for Cash | $426 |

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $4,073.54 |
| Payment Due Date | 06/16/11 |
| Minimum Payment Due | $74.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 15 years | $8,529 |
| $132 | 3 years | $4,754 (Savings=$2,095) |

If you would like information about credit counseling services, call 1-888-797-2885.

## CHASE FREEDOM REWARDS SUMMARY

| | |
|---|---|
| Previous Points Balance | 2,727 |
| Points earned on purchases | -124 |
| 10% Bonus Points on Your Spend | -15 |
| Bonus 10 Points on Every Purchase | 10 |
| Points Redeemed at This Point | 2,800 |
| Current Points Total | 100 |

Get 5% Cash Back in quarterly bonus categories that change. Signing up is free and easy! 5% Cash Back categories are subject to a quarterly maximum. See full details and sign up at chase.com/freedom.

As a Chase Checking customer, you earn more cash back for all your spending. You get 1 point for every $1 you spend, plus you will receive 10% bonus points per $1 spent and 10 bonus points on every purchase. Redeeming your points for cash back is easy! You can receive a check, statement credit, or even direct deposit into your Chase Checking account.

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| | PAYMENTS AND OTHER CREDITS | |
| 04/25 | VERIZON WRLS 40000-60 FORT WORTH TX | -158.00 |
| 05/10 | Payment Thank You | -100.00 |
| | PURCHASES | |
| 05/09 | CUST SCRIPTS PHARM TAMPA FL | 35.00 |
| | INTEREST CHARGED | |
| 05/20 | PURCHASE INTEREST CHARGE | 33.81 |
| | TOTAL INTEREST FOR THIS PERIOD | $33.81 |

| 2011 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2011 | -$78.05 |
| Total interest charged in 2011 | $175.08 |

Year-to-date totals reflect all charges minus any refunds applied to your account.

**veri*z*on**wireless

5175 Emerald Pkwy
Dublin, OH 43017

05/26/11

0022419 01 AT 0.562 **AUT 2 TS 2 4962 33319-6

MAIZETTA PIERRE
5961 N FALLS CIRCLE DR
APT 414
LAUDERHILL    FL 333 9-6819

**ACCOUNT NUMBER**          0001          **BALANCE DUE: $143.18**

                    *** PAST DUE ACCOUNT ***
    Do not ignore this notice. Your eligibility for future service is based
    on your payment history, so we advise you to make payment immediately.

**Dear Verizon Wireless Customer:**

Our records indicate your account is past due.

To avoid interruption of service and the possibility of incurring a $15
per line reconnection fee, the past due balance must be paid now.

For your convenience, you can pay from your Verizon Wireless phone by
dialing #PMT or visit our easy-to-use and secure payment website at
www.verizonwireless.com/PayMyBill. We accept checks, debit cards and most
major credit cards. Payments can be made 24 hours a day, free of charge.

Verizon Wireless Customer Financial Services
1-866-266-1445

If you have already made payment, please disregard this notice.



DETACH HERE AND RETURN FOR TIMELY PAYMENT PROCESSING

Please include your account number(s) on your check:
Account Number:          0001
Market Code:  0025
Total Balance: $143.18          Amount of Payment_____

Electronic Fund Transfer (EFT) - Your check authorizes us either to make
a one-time EFT from your account or process as a check. An EFT may be
withdrawn from your account the same day you make your payment and your
check is not returned to you. If you want it to be excluded from EFT, please
call 1-866-544-0401. If payment is returned unpaid, you authorized us to
collect an additional $25 fee through EFT from your account.

MAIZETTA PIERRE                              P. O. Box 660108
5961 N FALLS CIRCLE DR                       Dallas, TX  75266-0108
APT 414
LAUDERHILL    FL 33319-6819



EXHIBIT
B

MARZETH PIERRE
6-13-11

VERIZON,

I HAVE NEVER SEEN SUCH IN-
COMPETENCE COMPANY AND IS EXTREMELY
HAPPY THAT I CANCELL WITH YOU.

LESS THAN AN HOUR AFTER I SIGN UP,

I LEARNED I HAVE TO GO OUT OF MY CITY
TO WORK. IMMEDIATELY, I CALLED VERIZON
TO CANCEL AND AFTER HOURS I FINALLY
GET A REP. WHO SEEM TO HAVE A BRAIN.
WHO SAID SHE WAS SUCCESSFUL IN GETT-
ING IT CANCELL. OBVIOUSLY, NOT THE
CASE. SINCE ONE GOTTEN, AMONG OTHER
LETTERS —
    (1) – 2 BILLS, 1 PAST DUE LETTER.
    (2) – A NUMBER OF CALLS WARNING ME
      ABOUT PAYMENT AND TO AVOID
      COLLECTION.

I WAS TOLD THE EQUIPMENT WAS
RETURN, THE MONEY WAS CREDITED BACK
TO MY CREDIT CARD. (STATEMENT ENCLOSED)



BECAUSE I MUST TELL YOU CRAZIES,
(1) I AM RECORDING ALL THE CALLS AND THREAT
    ABOUT COLLECTION, SAVING LETTERS.
(2) IF YOU CRAZIES PUT MY NAME INTO
    COLLECTION. YOU'LL HEAR FROM ATTORNEY
    WITH THIS KIND OF SERVICE I'M SURPRISE
    YOU PEOPLE HAVE ANY CUSTOMERS PTO!

Marzeth P.



EXHIBIT
C
tabbies

## Valentine & Kebartas, Inc.

P.O. Box 325
Lawrence, MA 01842
(800) 941-3849

RE: Verizon Wireless

ORIGINAL CREDITOR: Verizon Wireless

ACCOUNT NO: [          ]0001

**TOTAL DUE: $ 305.35**

August 26, 2011

Dear MAIZETTA PIERRE,

We are concerned about the current economic crisis and the effect that it is having on the markets, and ultimately you. We understand in today's economic climate paying bills is becoming more and more difficult. It is our goal to help you get this debt paid. This letter will serve as confirmation that our client has agreed to extend you a settlement offer up to **20%** off the total balance due.

To complete this agreement you must contact our office at 1-(800) 941-3849 within **10 days** of this offer. If payment is made without notifying our office the settlement will be null and void.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the curr creditor. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Should you wish to discuss this matter, please call us at the above toll-free number.

P.O. BOX 5804
TROY MI 48007-5804
RETURN SERVICE REQUESTED



PRESORT
FIRST-CLASS
U.S. POSTAGE &
FEES PAID
HOV SERVICES

S-OTVAKI10 L-350 A[          ]00001
P1NHFV00203940 I03941

MAIZETTA PIERRE
5961 N FALLS CIRCLE DR APT 414
LAUDERHILL FL 33319-6819



EXHIBIT

D

**glantzlaw**

RELENTLESS PURSUIT OF JUSTICE.

Ronald P. Glantz
Also admitted in DC & NY Bars

Wendy Newman Glantz
Board Certified
Marital & Family Law
Family Law Mediator

September 12, 2011

Valentine & Kebar as, Inc.
P.O. Box 325
Lawrence, MA 01842

RE:   **Our Client:**   **Maizetta Pierre**
      **Our File:**   **687497**
      **Your client:**   **Verizon Wireless**
      **Account:**   ██████████0001

To Whom It May Concern:

Please be advised that The Law Office of Glantzlaw is writing this letter on behalf of Ms. Maizetta Pierre who has received debt collection communications from your company. Please be advised that your client's entitlement to this claim, as well as the amount claimed is disputed.

Ms. Pierre advises and her documents confirm that she placed an order with Verizon for new service. Within 15 minutes of placing that order she cancelled it because she learned she would be moving out of the area. Verizon cancelled the order, never delivered the equipment and refunded her credit card. A copy of Verizon's cancellation is attached.

Accordingly, there is no basis for any claim by your principal.

Pursuant to the Fair Debt Collection Practices Act, 15 USC (1692) et seq., you are hereby directed to:

1.   Cease all further communication with our client; and
2.   Provide the undersigned with verification, addressing the facts outlined in paragraph two, including the names and addresses of all persons who claim they can verify that our client signed and received a copy of the purported contract.

Failure to provide proof upon receipt of this letter will indicate that this claim of debt remains disputed, and that all collection activity must cease until the debt is verified. Further, if you have reported or intend to report this matter to any credit bureau, it must be reported as disputed.

7951 W 6th Street • Suite 100 • Plantation, FL 33324
englis 1  tel: 954.423.0086 • toll free: 800.290.7871

**EXHIBIT**

**E**

Valentine & Kebartas, Inc.
September 12, 2011
Page Two


Your failure to respond as demanded herein shall be considered as an intention on your part to refuse to amicably resolve this dispute between your principal and our client. You will therefore leave us with no choice but to advise our client concerning the avenues available under law. However, we anticipate your cooperation herein.

Very truly yours,

**GLANTZLAW**

BY:

KATHLEEN DOLAN-VALDES, ESQ.


KDV: kc
cc: Maizetta Pierre

Verizon Wireless
5175 Emerald Parkwy
Dublin, OH 43017

UNITED COLLECTION BUREAU, INC.
5620 SOUTHWYCK BLVD SUITE 206
TOLEDO OH 43614

1-800-867-3104

MAIZETTA Z PIERRE
5961 N FALLS CIRCLE DR APT 414
LAUDERHILL FL 33319-6819

December 16, 2011

Re: VERIZON WIRELESS SOUTHWEST
Account Number:            0001
Service Date:
Principal Amt:      $305.35
Collection Fee:      $54.96
Balance Due:      $360.31

This account has been placed with our office for collection. Please pay in full to our office or call for arrangements.

When calling our office, please refer to reference number 34194856.

Business Hours:    8:00AM – 10:00PM Eastern Time Monday – Thursday
8:00AM – 8:00PM Eastern Time Friday
8:00AM – 4:00PM Eastern Time Saturday

Sincerely,

United Collection Bureau, Inc.

This is an attempt to collect a debt by UCB, Inc., a debt collector, and any information obtained will be used for that purpose.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The Collection Fee (if any) detailed above has been added to your account balance by Verizon Wireless in accordance with state law and as authorized in your Customer Agreement with Verizon Wireless. The Collection Fee is not assessed to your account balance by UCB.

### SEE REVERSE SIDE FOR IMPORTANT INFORMATION

ICUG27000VDN

PO BOX 140190
TOLEDO OH 43614-0190

ADDRESS SERVICE REQUESTED

❏ Please check box if address shown is incorrect or insurance information has changed, and indicate change(s) on reverse side.

34194856-VDN      682087131

MAIZETTA Z PIERRE
5961 N FALLS CIRCLE DR APT 414
LAUDERHILL FL 33319-6819

PLEASE RETURN THIS PORTION WITH PAYMENT  DO NOT ATTACH CHECK TO STUB

Re: VERIZON WIRELESS SOUTHWEST
Account Number:            0001
Service Date:
Principal Amt:      $305.35
Collection Fee:      $54.96
Balance Due:      $360.31

REMIT TO:

UNITED COLLECTION BUREAU, INC.
PO BOX 140190
TOLEDO OH 43614-0190



EXHIBIT
F

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

MAIZETTA PIERRE,

     Plaintiff

vs.

                                                CASE NO. 12-11026-18

VERIZON WIRELESS
SERVICES, LLC,

     Defendant.

_____/

## NOTICE OF APPEARANCE

Please take notice that Robert J. Alwine, Esq. hereby enters his appearance on behalf of Defendant in the above-captioned action and requests that copies of all briefs, motions, orders, correspondence, and other papers be served on the undersigned.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on this date by First Class U.S. Mail and Facsimile [813-223-5402] to: **William Peerce Howard, Esq.**, Morgan & Morgan, Tampa, P.A., One Tampa City Center, Tampa, FL, 33602.

Dated: May 29, 2012                     Respectfully submitted by:

                                     Robert J. Alwine (Fla. Bar. No. 404179)
                                     ROBERT JOSEPH ALWINE, P.A.
                                     Four Seasons Tower
                                     1441 Brickell Avenue, Suite 1400
                                     Miami, Florida 33131
                                     Tel: (305) 372-3300
                                     Fax: (786) 206-1480

                                     *Attorney for Verizon Wireless*